1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9    Peter Adolphus Gbelia,                    No. CV-15-01799-PHX-DLR

10                            Plaintiff,        **ORDER**

11   v.

12   Nationstar Mortgage LLC, et al.,

13                            Defendants.

14

15

16          Before the Court is Defendant Nationstar Mortgage LLC's ("Nationstar") Motion

17   to Dismiss.  (Doc. 11.)  The motion is fully briefed.[1]  For the following reasons, the

18   motion is granted.

19                            **BACKGROUND**

20          Plaintiff is a Lieutenant Colonel in the United States Air Force.  (Doc. 1-1 at 42, ¶

21   1.)  On September 20, 2007, Plaintiff borrowed $237,500.00 from Miner Kennedy

22   Association ("Miner Kennedy") to purchase property in Chandler, Arizona ("Property").

23   (*Id.* at 43, 50-55.)  The loan is evidenced by a promissory note ("Note") executed by

24   Plaintiff in favor of Miner Kennedy, and secured by a deed of trust ("DOT") recorded

25   against the Property in the Office of the Maricopa County Recorder.[2]  (*Id.*; Doc. 11-1, Ex.

26   _____

27          [1]  Nationstar's request for oral argument is denied because the issues are
     adequately briefed and oral argument will not aid the Court's resolution of the motion.
28   LRCiv 7.2(f).

          [2]  Although Plaintiff's complaint refers to the September 20, 2007 Note, he

1.)  The DOT identifies Plaintiff as the borrower, Miner Kennedy as the lender, Orange Coast Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS")[3] as the nominal beneficiary acting on behalf of Miner Kennedy and its successors and assigns.  (Doc. 11-1, Ex. 1.)

Thereafter, the Note and DOT (collectively "Loan") were transferred to AmTrust Bank ("AmTrust").  (Doc. 1-1 at 44, ¶ 7.)  On December 4, 2009, the Office of Thrift Supervision closed AmTrust and appointed the Federal Deposit Insurance Corporation ("FDIC") as its Receiver.  (*Id.*; Doc. 11 at 3 n.4 (citing http://www.fdic.gov/bank/individual/failed/amtrust.html).)[4]  That same day, pursuant to a Purchase and Assumption Agreement ("P&A"), AmTrust's assets were transferred to New York Community Bank ("NYCB").  (Doc. 11-1, Ex. 2.)  On September 3, 2010, the FDIC and Nationstar entered into an Agreement for Purchase and Sale of Servicing Rights ("Servicing Agreement"), in which the servicing rights to the Loan were assigned to Nationstar.  (Doc. 11, Ex. 3.)

At some point, Plaintiff defaulted on the Loan.[5]  MERS assigned the DOT to

---

attaches a deed of trust dated November 5, 2003 that secures a different, $204,200.00 promissory note executed that same day.  (Doc. 1-1 at 57-72.)  Nationstar attaches the relevant deed of trust securing the September 20, 2007 Note.  The Court may take judicial notice of this document without converting Nationstar's motion to a motion for summary judgment because it is a public record, and its contents are alleged in and central to Plaintiff's complaint.  *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

[3] "MERS is a private corporation that administers a national electronic registry to track the transfer of ownership interests and servicing rights in mortgage loans.  Members assign their interests to MERS, and MERS becomes the mortgagee of record.  When one member transfers an interest to another member, MERS privately tracks the assignment but remains the mortgagee of record, thereby allowing members to sell their interests without having to record the transactions in the public record."  *Sitton v. Deutsche Bank Nat'l Trust. Co.*, 311 P.3d 237, 238 n.1 (Ariz. Ct. App. 2013).

[4] The Court will consider the FDIC records cited by Nationstar, including Exhibits 2 and 3 to its motion, because it may take judicial notice of public records and reports of administrative bodies, such as the FDIC, without converting a motion to dismiss into a motion for summary judgment.  *See Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

[5] For whatever reason, Plaintiff does not expressly include this information in his complaint.  However, nowhere does he allege or argue that Nationstar cannot lawfully foreclose because he is not in default.  Nor does he dispute that he defaulted prior to April

1  Nationstar ("Assignment") on March 21, 2013, and recorded the assignment on April 2 of
2  that year.  (Doc. 1-1 at 43, 80-81.)  On May 7, 2015, Nationstar substituted David W.
3  Cowles as trustee ("Substitution of Trustee").  (*Id.* at 43, 77.)  That same day, Cowles
4  noticed a trustee's sale of the Property for August 11, 2015 ("Notice of Trustee's Sale").
5  (*Id.* at 43, 74-75.)

6        On August 10, 2015, Plaintiff filed his complaint in Maricopa County Superior
7  Court, along with a motion seeking a temporary restraining order ("TRO") enjoining the
8  scheduled trustee's sale. (*Id.* at 29-37, 42-48.)  The court scheduled a hearing on
9  Plaintiff's TRO request, but vacated it after Nationstar voluntarily agreed to postpone the
10  trustee's sale pending resolution of this case.  (*Id.* at 93-99.)  Thereafter, Nationstar
11  removed the matter to this Court pursuant to 28 U.S.C. § 1332, and now moves to dismiss
12  the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docs. 1, 11.)

13                              **LEGAL STANDARD**

14        When analyzing a complaint for failure to state a claim to relief under Rule
15  12(b)(6), the well-pled factual allegations are taken as true and construed in the light
16  most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th
17  Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the
18  assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are
19  insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.
20  Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  Nor is the court required to accept as true
21  "allegations that contradict matters properly subject to judicial notice," or that merely are
22  "unwarranted deductions of fact, or unreasonable inferences*." Sprewell v. Golden State
23  Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  To avoid dismissal, the complaint must
24  plead sufficient facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp.*

26  2, 2013 in his response in opposition to Nationstar's motion to dismiss.  Moreover,
27  Plaintiff attaches public records showing that a trustee's sale was scheduled and cancelled
in 2010, indicating that he had already defaulted by that time.  (Doc. 1-1 at 83-87.)
28  Plaintiff seems to admit that he defaulted on the Loan, and only challenges Nationstar's
status as the party lawfully authorized to foreclose.  Accordingly, the Court considers
Plaintiff's default as fact because, otherwise, his complaint would be nonsensical.

1   v. Twombly, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a

2   'probability requirement,' but it asks for more than a sheer possibility that a defendant

3   has acted unlawfully."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

4   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

5   it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

6   Id. (quoting Twombly, 550 U.S. at 557.)

7   ## DISCUSSION

8   Plaintiff's claims are brought pursuant to A.R.S. § 33-420, which states, in

9   relevant part:

10   A.  A person purporting to claim an interest in . . . real property, who
11   causes a document asserting such claim to be recorded in the office of the
     county recorder, knowing or having reason to know that the document is
12   forged, groundless, contains a material misstatement or false claim or is
     otherwise invalid is liable to the owner or beneficial title holder of the real
13   property for the sum of not less than five thousand dollars, or for treble the
     actual damages caused by the recording, whichever is greater, and
14   reasonable attorney fees and costs of the action.

15   B.  The owner or beneficial title holder of the real property may bring an
     action pursuant to this section in the superior court in the county in which
16   the real property is located for such relief as is required to immediately
     clear title to the real property as provided for in the rules of procedure for
17   special actions.  This special action may be brought based on the ground
     that the lien is forged, groundless, contains a material misstatement or false
18   claim or is otherwise invalid.  The owner or beneficial title holder may
     bring a separate special action to clear title to the real property or join such
19   action with an action for damages as described in this section.

20   To state a claim under this section based on a misstatement of fact or false claim, Plaintiff

21   must plausibly allege that (1) Nationstar knowingly recorded or caused to be recorded a

22   document containing a misstatement of fact or false claim and (2) the misstatement or

23   false claim was material to him.  Sitton v. Deutsche Bank Nat'l Trust. Co., 311 P.3d 237,

24   243 (Ariz. Ct. App. 2013).

25   ## I.  Misstatement of Fact/False Claim

26   Plaintiff alleges that Nationstar recorded or caused to be recorded the Assignment,

27   Substitution of Trustee, and Notice of Trustee's Sale, which falsely state that Nationstar

28   has an interest in the Property.  (Doc. 1-1 at 43-44, ¶¶ 5-6.)  Plaintiff alleges that the

FDIC still owns the Loan and is the only entity legally authorized to order a trustee's sale upon his default.  (*Id.* at 44-45, ¶¶ 7-9.)   These allegations, however, are directly contradicted by documents properly subject to judicial notice, and are premised on a series of unsupportable legal conclusions.

### A.  *D'Oench, Duhme* and 12 U.S.C. § 1823(e)

First Plaintiff alleges that, once the FDIC acquired the Loan as Receiver for AmTrust, "the provisions naming MERS as the beneficiary became null and void by reason of the statutory avoidance powers of the FDIC under the case law of the *D'Oench, Duhme* doctrine and the partial codification thereof in 12 U.S.C. [§] 1823."  (*Id.*, ¶ 7.) When the FDIC acquires a note, the *D'Oench, Duhme* doctrine precludes an obligor from defending against his obligation on the note based on a secret agreement with the lender. *Fed. Deposit Ins. Corp. v. Newhart*, 892 F.2d 47, 49 (8th Cir. 1989).  The doctrine "is a principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial condition, by protecting bank authorities from suits founded on undisclosed conditions or deceptive documents."  *Brookside Assocs. v Rifkin*, 49 F.3d 490, 493 (9th Cir. 1995).  It reflects "a 'federal policy to protect [the FDIC], and the public funds which it administers, against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insurers or to which it makes loans.' "  *Falk v. Mt. Whitney Sav. & Loan Ass'n*, 5 F.3d 347, 350 (9th Cir. 1993) (quoting *D'Oench, Duhme & Co. v. Fed. Deposit Ins. Corp.*, 315 U.S. 447, 457 (1942)).

Congress codified this doctrine in 12 U.S.C. § 1823(e), which provides that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . ., either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC]," unless certain conditions are met.  "Section 1823 codified and 'was meant to offer as much protection as the common law rule in *D'Oench*.'"  *Falk*, 5 F.3d at 351 (quoting *Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 246 n.4 (9th Cir. 1990)).  *D'Oench, Duhme*

and its statutory counterpart protect the FDIC from agreements not easily discoverable by examining a bank's records, and which affect the value of assets it acquires.

Plaintiff cites no authority, and the Court is aware of none, permitting an obligor, as opposed to the FDIC or one who subsequently purchases a note from it, from invoking the doctrine's protections.   Moreover, Plaintiff's invocation of *D'Oench, Duhme* is illogical in this context.   Plaintiff seems to suggest that the DOT naming MERS as the nominal beneficiary on behalf of Miner Kennedy and its successors and assigns constitutes a secret agreement that became unenforceable upon the FDIC's acquisition of AmTrust's assets.   If Plaintiff contends that the DOT itself is unenforceable, then adoption of Plaintiff's argument would essentially nullify all instruments securing loans acquired by the FDIC.   If, however, Plaintiff contends that only MERS' nominal beneficiary designation is unenforceable, then he fails to explain why the DOT remains valid while the beneficiary designation contained therein does not.

Furthermore, the FDIC's own public records show that it both was aware of and accepted MERS' role in the mortgages it acquired.   Section 5.12 of the Servicing Agreement states, in relevant part: "With respect to each Mortgage Loan registered on the MERS® System, Seller and Purchaser shall comply with all notice and transfer requirements of MERS® System and the Applicable Requirements."   (Doc. 11, Ex. 3.) "One of the purposes behind § 1823(e) is to facilitate the purchase and assumption of failed banks as opposed to their liquidation."   *Newhart*, 892 F.2d at 49.   Employing *D'Oench, Duhme* to undermine the FDIC's purchase, assumption, and subsequent sale of a failed bank's assets is inconsistent with the doctrine's purpose.   Plaintiff's legal position is unsupportable.

**B.  Miner Kennedy's Defunct Status**

Next, Plaintiff alleges "to the extent that MERS purported in recorded documents to act as nominee on behalf of Miner Kennedy Associates and not as nominee for the FDIC, Miner Kennedy Associates is defunct and any action as its nominee is ineffective and false."   (Doc. 1-1 at 45, ¶ 10.)     Once again, Plaintiff's allegation contradicts

documents properly subject to judicial notice, and is an unsupportable legal conclusion. In the Assignment, MERS does not purport to act as the nominee solely for Miner Kennedy.  Rather, MERS assigned the DOT to Nationstar "as nominee for Miner Kennedy Assoc, *its successors and/or assigns*."  (Doc. 1-1 at 80 (emphasis added).) Plaintiff alleges and Nationstar agrees that at some point AmTrust acquired the Loan, then the FDIC acquired AmTrust's assets.  Therefore, AmTrust, the FDIC, and NYCB as the purchaser under the P&A are successors of Miner Kennedy.

Moreover, Plaintiff's legal contention is contrary to Arizona law.  In *Sitton v. Deutsche Bank National Trust Company*, a plaintiff challenging the authority of the defendant bank to order a trustee's sale argued, among other things, that MERS lacked authority to make assignments on behalf of the original lender, SFG Mortgage, because the lender "had filed for bankruptcy and been dissolved by the corporation commission years before the record assignments were executed."  311 P.3d at 242-43.  The Arizona Court of Appeals rejected this argument, explaining that "[t]he deed of trust clearly named MERS as SFG Mortgage's nominee and the beneficiary, and provided that MERS had the right to exercise SFG Mortgage's interests.  MERS was the mortgagee of record and could assign the note and the deed of trust *without regard to SFG Mortgage's legal status*."  *Id.* at 243.  Thus, the fact that Miner Kennedy is defunct has no bearing on MERS' authority under the DOT to act on its behalf, or that of its successors and assigns.

### C.  Splitting the Note and DOT

Finally, Plaintiff alleges that "[i]f the Note or the Deed of Trust were somehow transferred to Nationstar, Plaintiff alleges upon information and belief that said Note and Deed of Trust have been split and that no foreclosure or action on said Note can be commenced lawfully in Arizona because Nationstar does not own both instruments even if it became owner or holder of one of them."  (Doc. 1-1 at 45, ¶ 9.)  Defendants correctly point out that this "splitting of the note" theory has been rejected by Arizona courts and the Ninth Circuit.  *See In re Mortg. Elec. Registration Sys., Inc.*, 578 F. App'x 706, 707 (9th Cir. 2014) ("Appellant's claims were dismissed . . . because they were premised on

the erroneous legal theory that assignments of the deed within [MERS] . . . were invalid under Arizona law because the note was 'split' from the deed.  That theory was rejected by our holding that, under Arizona law, 'the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders.'"  (quoting *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034, 1044 (9th Cir. 2011))); *Hogan v. Washington Mut. Bank, N.A.*, 277 P.3d 781, 784 (Ariz. 2012) ("Hogan also claims that 'the note and the trust deed go together' and 'must be construed together.'  Although this is generally true, the note and the deed of trust are nonetheless distinct instruments that serve different purposes. . . .  [T]he dispositive question here is whether the trustee, acting pursuant to its own power of sale or on behalf of the beneficiary, had the statutory right to foreclose on the deeds of trust.  Hogan does not dispute that he is in default under the deeds of trust and has alleged no reason to dispute the trustee's right." (internal citations omitted)).[6]  Plaintiff's unsupported legal conclusion cannot defeat Nationstar's motion to dismiss.

## II. Materiality

Plaintiff claims that Nationstar's alleged misrepresentations in the Assignment, Substitution of Trustee, and Notice of Trustee's sale were material to him because they caused him to suffer credit damage, which in turn caused him to lose the security clearance required for him to serve on active duty in the Air Force.  (Doc. 1-1 at 45-46, ¶ 12.)  "A misrepresentation is material if a reasonable person would attach importance to its existence or nonexistence in determining [his or her] choice of action in the transaction in question."  *Sitton*, 311 P.3d at 243 (internal quotations and citations omitted).  Plaintiff's allegations of materiality are implausible.  His credit was damaged because he failed to pay his mortgage.  He cannot plausibly allege that three documents

---

[6] Plaintiff does not respond to these authorities or otherwise defend the legal position articulated in his complaint.  "Failure to respond to arguments raised in dispositive motions 'may be deemed a consent to the . . . granting of the motion.'" *Rodriguez v. Quality Loan Serv. Corp.*, No. CV-09-1853-PHX-FJM, 2009 WL 4807315, at *1 (D. Ariz. Dec. 4, 2009) (quoting LRCiv 7.2(i)).

1    recorded *after* he defaulted had any effect on his decision to stop making mortgage

2    payments.

3         Plaintiff's allegations mirror those in *Coronado v. Chevy Chase Bank*, where the

4    plaintiffs similarly accused the defendant bank of recording documents falsely purporting

5    to claim an interest in their property in violation of A.R.S. § 33-420.  554 F. App'x 549,

6    551 (9th Cir. 2014).  In affirming the dismissal of the plaintiffs' claims, the Ninth Circuit

7    concluded that, "any misstatements were not material to the [plaintiffs].  [They] admit

8    they failed to make payments on the note.  They were thus subject to foreclosure no

9    matter who was assigned as beneficiary or when."  *Id.* (internal quotations and citations

10   omitted).   Similarly, the Arizona Court of Appeals in *Sitton* held that "recorded

11   assignments falsely represent[ing] the assignment dates and the identity of the assignor

12   for whom MERS was then acting as nominee," were not material to the plaintiff "because

13   the timing and sequence of assignments could have had no effect on [the plaintiff's]

14   choice of actions."  311 P.3d at 243.

15        Citing dicta in *Sitton*, Plaintiff argues that he has adequately alleged materiality

16   because Nationstar's alleged misrepresentations could leave him "exposed to otherwise

17   non-recourse debt on the property . . . ."  (Doc. 14 at 8.)  After concluding that the alleged

18   misrepresentations were not material to the plaintiff because they did not influence her

19   decision to default, the court in *Sitton* hypothesized that:

20        A misrepresentation concerning a beneficiary's identity could be material to
         a trustor in some circumstances.  For example, a trustor who qualifies for
21        the protection of Arizona's anti-deficiency statute might reasonably rely on
         a putative beneficiary's claim when deciding whether to contest a trustee's
22        sale for that party's benefit.  In such circumstances, a trustee's sale for the
         true beneficiary would absolve the trustor of further liability, but a trustee's
23        sale for any other entity could leave the trustor still liable to the beneficiary.
         Accordingly, when the record supports an inference that the putative
24        beneficiary was not the correct party, the trustor should be entitled to
         discovery. Here, however, [the plaintiff] has failed to point to anything in
25        the record to suggest that [defendant] was not the true beneficiary.

26   311 P.3d at 244 n.6.  Plaintiff's reliance on this footnote is misplaced.  His case is

27   distinguishable from the hypothetical situation described in *Sitton* because, as explained

28   in part I, *supra*, Plaintiff has not plausibly alleged that Nationstar is not the true

- 9 -

beneficiary.   Absent factual allegations elevating Plaintiff's assertions above the speculative level, this Court cannot draw any inferences in his favor on this point.

Moreover, *Sitton*'s discussion of the possible effects that a trustee's sale on behalf of an entity other than the true beneficiary could have on the anti-deficiency protections[7] afforded to qualifying borrowers is at odds with previous statements of the Arizona Supreme Court on the issue.   In *Hogan v. Washington Mutual Bank*, the plaintiff argued that, if a purported deed of trust beneficiary is not required to prove its status by producing the promissory note that the deed of trust secures, "the original noteholder may attempt to later pursue collection despite a foreclosure."   277 P.3d at 784.   The Arizona Supreme Court dismissed this argument and explained that "Arizona's anti-deficiency statutes protect against such occurrences by precluding deficiency judgments against debtors whose foreclosed residential property consists of 2.5 acres or less, as is the case here."   *Id.*   Thus, Arizona's highest court has assured borrowers that a trustee's sale on behalf of a disinterested entity will not leave them open to recourse by the true note holder.[8]   Plaintiff's fears concerning liability on otherwise non-recourse debt are, therefore, unfounded.

## III.  Request for Attorneys' Fees

Citing provisions in the Note entitling the holder to its reasonable attorneys' fees and costs incurred in enforcing the Note, Nationstar requests that it be awarded its reasonable attorneys' fees in defending this matter.  (Doc. 11 at 2, 10.)  Nationstar may

---

[7] Pursuant to A.R.S. § 33-814(G), when "property of two and one-half acres or less which is limited to and utilized for either a single one-family or single two-family dwelling" is sold at a trustee's sale, "no action may be maintained to recover the difference between the amount obtained by sale and the amount of the indebtedness . . . ."

[8] Nationstar argues that the dicta in *Sitton* merely clarified "that a misstatement could be material in instances involving claims between competing assignees." (Doc. 15 at 6.)  The Court agrees that misstatements in recorded documents concerning the identity of the true deed of trust beneficiary could be material to competing assignees.  However, *Sitton*'s discussion cannot reasonably be interpreted as clarifying this point.   The court clearly stated that such misrepresentations could be material to a *trustor* (meaning, in this context, borrower) by leaving him liable to the true note holder on the debt. Nevertheless, because *Sitton*'s dicta conflicts with *Hogan*, the Court finds it neither authoritative nor persuasive.

move for attorneys' fees in a manner that complies with LRCiv 54.2.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff has not plausibly alleged that Nationstar recorded or caused to be recorded documents containing material misstatements of fact or false claims in violation A.R.S. § 33-420.  Accordingly,

**IT IS ORDERED** that Defendant Nationstar's motion to dismiss, (Doc. 11), is **GRANTED**.  The Clerk of the Court is directed to terminate this case.

Dated this 18th day of March, 2016.

Douglas L. Rayes
United States District Judge